STATE OF VERMONT

ENVIRONMENTAL COURT

| | |
|---|---|
| In re: Kinney Drug and | } |
| Pomerleau Real Estate Application | } Docket No. 101-5-06 Vtec |
| (Appeal of Victoria, <u>et al.</u>) | } |
| (Cross-Appeal of City of Burlington) | } |
| | } |

<u>Decision and Order</u>

Appellants[1] Stephanie Victoria, Andrew Golub, Elisabeth Lang Golub, Anne Paradiso, Sean Stone, Jill Stone, M.A. Viets, Jeffrey Wick, and Wesco Realty, LLC appealed from a decision of the Development Review Board (DRB) of the City of Burlington approving a development application for a drugstore building and associated site improvements at 308 Shelburne Street at the southeast corner of the intersection of Shelburne Street and Prospect Parkway. The City of Burlington filed a cross-appeal raising traffic issues only. Appellants are represented by David H. Casier, Esq.; Appellee-Applicants Kinney Drug and Pomerleau Real Estate are represented by Scott A. McAllister, Esq.; and the City is represented by Kimberlee J. Sturtevant, Esq.

An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge, who took a site visit alone, by agreement of the parties. The parties were given the opportunity to submit written memoranda and requests for findings. Upon consideration of the evidence as illustrated by the site visit, and of the written memoranda and requests for findings filed by the parties, the Court finds and concludes as follows.

---

[1] These individual appellants were allowed to substitute as parties-appellant under 24 V.S.A. §4465(b)(3) as they were the actual members of the group "SPAN" (Shelburne Road/Prospect Parkway Association of Neighbors) which did not qualify for party status as a group under §4465(b)(4).

Applicants' project is proposed for a 55,037-square-foot property on the corner of Shelburne Street (U.S. Route 7) and Prospect Parkway. The property is located at the northern end of a Commercial zoning district, in a Design Review overlay district. A Residential Low Density zoning district adjoins the property to its east as well as across Prospect Parkway to its north.[2] A high-rise office building is located on the adjoining property to the south of the project property. Across Shelburne Street from the project property, also in the Commercial zoning district, is a gasoline station and convenience store owned by Appellant Wesco Realty, LLC.

The project property contains a dilapidated single-story existing restaurant building that has not been in use as a restaurant for some years. It has access to Shelburne Street by two wide curb cuts on either side of the existing building, the more northerly one of which is close to the intersection of Shelburne Street with Prospect Parkway. At present the property has no access onto Prospect Parkway. It has an existing poorly defined parking and on-site circulation area extending eastwards from each curb cut and connecting around the rear of the restaurant building. An existing band of trees extends along the easterly side of the property to Prospect Parkway and along (and within) the ravine on the northerly side of the property.

The building was at one time listed on the state Register of Historic Places, as an example of the "fairytale colonial revival" Howard Johnson restaurant style, but it was removed from the register on June 14, 2006, as modifications to it in 1984 had changed it

_____

[2] The fact that some traffic using the proposed project site would of necessity travel on the westbound lanes of Prospect Parkway adjacent to the adjoining residential district does not mean that the project is impermissibly located in the residential rather than the commercial zoning district. The project property is entirely within the Commercial zoning district. The Court appreciates the residents' concern to preserve what they characterize as the "gateway" to their residential area, but the zoning districts are established in the Zoning Ordinance and the Court must analyze the project according to the zoning ordinance as it exists.

so that it no longer reflects the architectural significance for which it was listed. Removal of the building will not adversely affect the heritage of Burlington. No blasting is proposed for the site.

The Court ruled on the record on the motions for summary judgment with regard to Questions 2 and 5. With regard to Question 5, the proposed project falls within the use category of "retail establishment," which is a permitted use in the Commercial zoning district. It therefore need not be addressed as a "convenience store," which is a sub-category of the "retail establishment" use category applicable to smaller stores (which are allowed in some residential districts).

With regard to Question 2, the proposed project does require review under the conditional use criteria, not because of its use category, as discussed with relation to Question 5, but due to the fact that the Englesby Brook and Ravine is a significant natural area, which requires major impact review under §13.1.3(a)(4) of the Zoning Ordinance, and therefor requires conditional use approval. §13.1.5.

After those rulings and before the remaining days of trial, the parties agreed that the only sections of the Zoning Ordinance remaining at issue in this appeal as of the time of trial are those discussed below, grouped into essentially three areas: issues relating to the effect on Englesby Brook, issues relating to landscaping and screening, and issues relating to traffic, parking and circulation.

The differences between the plans as presented to or as approved by the DRB and the plans as presented in Court are within the scope of the issues raised at the DRB, and therefore did not require remand. In fact, an earlier proposal was designed with an exit and entrance in both directions on Prospect Parkway; Applicants modified the plan to propose a one-way left turn exit, to address neighborhood concerns expressed before the Design Advisory Board. The issue was on the table at the Development Review Board, as reflected in City staff comments to the DRB favoring access from Prospect Parkway directly

3

into the site. The City filed a cross-appeal on these traffic and access issues and disclosed, at least a month before the two days of hearing scheduled for traffic issues, that it would be arguing for a full-use access on Prospect Parkway.

Englesby Brook flows from a protected area located to the east and southeast of the project property under the project property through an existing 30" diameter stormwater line, exiting into an existing ravine located on the northerly (Prospect Parkway) side of the project property. Two other existing stormwater lines from the northeast cross under Prospect Parkway to an outfall within the ravine. The sides of the ravine are eroding; the erosion is exposing the roots of some of the trees in the ravine, and therefore increasing the risk of loss of those trees and further accelerated erosion. In connection with the site work for the proposed building, parking lot, and access driveways, Applicants propose to build a retaining wall along the southern and eastern sides of the ravine, to repair eroded areas and stabilize and save as many trees within the ravine as are capable of being saved. They propose to install a new riprap-controlled outfall for the new stormwater retention system on the property, including the outfalls from the existing stormwater lines, that will substantially reduce or eliminate the likelihood of erosion within the ravine in the future. The proposed improvements to the ravine and the stormwater-handling system on the property will reduce future pollution and therefore have a positive effect on the water quality of Englesby Brook, to the extent that it is affected by the project property.

Applicants propose to install a 24-foot-wide driveway giving access to and from[3] Prospect Parkway close to the northeasterly corner of the project property. This proposed access will not further disturb the Englesby Brook ravine or further affect the water quality

---

[3] This driveway was originally proposed as a left-turn exit only in response to concerns expressed by residents of the Prospect Parkway neighborhood; the current proposal before the Court is for a two-lane entrance and exit driveway.

4

of Englesby Brook, due to the proposed retaining wall and the stormwater treatment system and drainage system proposed for the property.

Accordingly, the proposed project meets the requirements for approval under §6.1.10(e) of the Zoning Ordinance in that it will have an adequate stormwater and drainage system to provide for nature's events. The proposed project meets the requirements for approval under §13.1.6(d) of the Zoning Ordinance, in that it will not cause unreasonable soil erosion (and, indeed, will reduce or eliminate the soil erosion now occurring); and meets the requirements for approval under §13.1.6(h) of the Zoning Ordinance, that the proposed project not have adverse effect the significant natural area of Englesby Brook and its Ravine.

Applicants propose to remove the existing building and to construct a new single-story 11,500 square foot building for use as a drugstore, including a pharmacy with a licensed pharmacist and a drive-up window for prescription pick-up. The proposed store will also sell non-prescription drugs and other health care and personal care products; the store will not sell gasoline. The market area from which the store is expected to draw customers includes portions of Burlington, South Burlington and Shelburne.

The building is proposed to be located close to Shelburne Street, so that the face of the building is set back ten feet from the edge of the public sidewalk along Shelburne Street, and to have windows only on the west (Shelburne Street) and south facades (except for the small prescription pick-up window under the drive-up overhang on the easterly side) of the building. The building is proposed to have a concrete walkway along its west and south sides, leading to an entrance on its southwest corner, with a gable roof over that corner of the building's walkway, supported by columns.

Some trees in the northeastern portion of the property will be removed to allow for the construction of the parking lot and access onto Prospect Parkway; some but not all of the trees to be removed are in poor condition. A large locust tree in the northeast corner

of the property will be preserved.

Three maple trees, four spruce trees, and eleven arborvitae will be planted along the easterly boundary near the Prospect Parkway access drive, to increase the screening between the property and the neighborhood to the east. Only the upper crowns of only some of the trees scheduled for removal are visible from properties in the Prospect Parkway neighborhood; enough trees will remain so that the removal of the trees will not adversely affect the residential properties in the neighborhood, if their removal is noticeable at all. Additional street trees and plantings are proposed for the Shelburne Street side of the property, at either side of the Shelburne Street driveway, and along the southerly property line, so that the project will be attractively landscaped on all sides..

Accordingly, the proposed project meets the requirements for approval under §7.1.6(c) of the Zoning Ordinance in that the proposed landscaping and screening is adequate to insure protection of and to enhance the quality of the project and the adjacent properties. The proposed project also meets the requirements for approval under §6.1.10(b) of the Zoning Ordinance, regarding the preservation of the landscape.

Applicants propose to eliminate the existing curb cut closest to the Shelburne Street-Prospect Parkway intersection, and to install a more defined 24-foot-wide curb cut as far south as possible on the property from the intersection, for access to the parking lot and drive-up window. Applicants propose to reconstruct the public sidewalk as necessary along Shelburne Street, and to plant additional street trees along Shelburne Street.

Applicants propose a loading dock and dumpster location on the north side of the building, with enough paved space between the building and the ravine retaining wall for a tractor-trailer of the size used by Kinney Drug for its weekly deliveries to back in and unload deliveries, or for a garbage truck to have access to the dumpsters. Applicants expect one tractor-trailer delivery per week, and have the capability to schedule this delivery when the store is closed or during off-peak hours for the use of the drive-through

6

to avoid conflicts with vehicles exiting the drive-through location. All other deliveries will be by smaller trucks that can use either the loading dock or can use the parking lot spaces to deliver by the front door during off-peak hours, and which can be scheduled so that no more than one such delivery is being made at any time. Without a waiver, under §10.1.9 the project would require four loading spaces. The loading dock provides one of the required loading spaces; the project qualifies for a waiver of three of these spaces under §§10.1.19(a) and (b) and 10.1.20(d) of the Zoning Ordinance, but only if the deliveries are scheduled as represented by Applicants..

Applicants propose to provide a drive-through access to a protected window on the east side of the building at which customers can pick up and pay for prescription medications without parking and going into the store. The drive-through lane is entered at the southeast corner of the building and exited at the northeast corner, from which a drive-through customer can either proceed to exit at Prospect Parkway or can turn to drive back through the parking lot to exit onto Shelburne Street.

Applicants propose to install a parking lot on the southerly and easterly sides of the building, containing fifty spaces, two of which qualify as accessible spaces. The configuration of parking spaces proposed for the easterly side of the parking lot were changed so as to preserve more of the existing trees along the northeasterly boundary of the property. The parking spaces are laid out so as to provide for ease of maneuvering vehicles in and out of the spaces and to and from both of the exits from the property. The parking lot is laid out at the side and rear of the building so as to avoid any parking in front of the building. The parking lot will not be visible from the Prospect Parkway neighborhood. Without a waiver, the proposed retail store would require 77 parking spaces.

The proposed project is located on a municipal bus line which stops near this intersection. Over eight hundred residences are located within an approximately ten-

minute walking distance of the proposed project; those residents are likely to walk or bicycle to the store. In addition, customers using the drive-through window will not require parking spaces; the drive-through window queuing lane is designed to accommodate approximately five cars without blocking any parking spaces.

As observed in a similar store on Williston Road[4] in South Burlington, of the 61 spaces in the Williston Road store's parking lot, during the three potential peak periods of 7:30 to 9:30 a.m., 11 a.m. to 1:30 p.m., and 3:30 p.m. to 6:00 p.m., the highest average number of occupied spaces during any of those periods was sixteen spaces. This difference between the available spaces and the necessary spaces is sufficiently great to confirm that, with the alternative transportation mode use and the shared use with the drive-through, fifty spaces will provide sufficient parking for the proposed project at its peak periods of use. The proposed project meets the requirements for a waiver of 27 spaces under §10.1.19 of the Zoning Ordinance.

Shelburne Street is a major arterial roadway, with two northbound and two southbound lanes at the project intersection. The intersection of Shelburne Street with Prospect Parkway is controlled by a traffic light (traffic signal); it is the first traffic signal encountered by southbound traffic on Shelburne Street, and the last traffic signal encountered by northbound traffic. However, unlike all the other traffic signals to its south, the traffic signals at this intersection are located on posts at the sides of the road rather than being suspended over the lanes of traffic at the intersection. For that reason, drivers in both directions, but especially northbound drivers, are not always aware of the signal or its status, and sometimes run the light at that location. Moreover, the signal that allows left turns from the easterly of the two southbound lanes of Shelburne Street is only activated if a car is stopped within that lane prior to the change of the signal, so that drivers

---

[4] The store is 1,000 square feet smaller; Williston Road has a slightly higher traffic volume than Shelburne Street.

of northbound vehicles do not necessarily anticipate that vehicles will be turning left across their path. Without adjustment, these features of the location and timing of the signal at the intersection may pose a problem during increased use of the intersection to access the Prospect Parkway driveway proposed for the project.

Shelburne Street carries a traffic flow of approximately 2,786 vehicles in the afternoon peak hour just to the south of Prospect Parkway. Prospect Parkway has one lane in each direction and carries a traffic flow of approximately 223 vehicles in the afternoon peak hour. The project is expected to generate approximately 128 additional vehicle trips using all the site driveways in the peak hour, of which approximately 49% would be entering the site and 51% would be leaving the site. Of the 128 additional trips through the project driveways, 31 would be so-called "pass-by" trips caused by vehicles already traveling on the adjacent roadways.

Most of the 128 trips will be entering and exiting the project driveways without traveling up (or down) Prospect Parkway beyond the site through the adjacent residential neighborhood. That is, of the 128 vehicle trips only three will be turning right onto Prospect Parkway when leaving the site, and only two will be coming from the east on Prospect Parkway and turning left into the site from Prospect Parkway. These additional five vehicle trips will not adversely affect the traffic already traveling on Prospect Parkway to the east of the project site. Vehicles are not expected to use the parking lot to cut through from Shelburne Road northbound to Prospect Parkway, because there is not sufficient delay at the light at the intersection to cause drivers to make the maneuvers necessary to turn right into the parking lot, turn left towards the Prospect Parkway exit, and turn right again at that exit, even if they are aware of the pathway (which will not be immediately apparent to the traffic on Shelburne Street).

Prospect Parkway curves somewhat towards the south, to the east of the project site. Vehicles turning left out of the Prospect Parkway driveway and vehicles approaching the

9

intersection westbound from farther east on Prospect Parkway will have an adequate sight distance of each other if some of the vegetation within the right-of-way for Prospect Parkway is cut back on neighboring properties. Such vegetation trimming is within the authority of the City to require or to perform; it is beyond the jurisdiction of the Court as those landowners are not parties to the present case. All other sight distances are adequate.

The queue of cars in the westbound lane of Prospect Parkway waiting to turn left onto Shelburne Street is not expected to either exceed the number of vehicles that can clear the intersection in one sequence of the light, or to extend easterly to prevent vehicles from exiting the project site to turn left onto Prospect Parkway to join that queue. However, it is likely that the timing and/or sequence of the light at Prospect Parkway will need adjustment to assure that such excess queuing does not develop; a condition has been imposed to accomplish this result.

The vehicle trips using the Shelburne Street driveway will not adversely affect the traffic on Shelburne Street, if left turns into and out of the Shelburne Street driveway are minimized. With the Prospect Parkway driveway, most of the left turn movements to and from the site can be expected to use the signalized intersection, which will be safer and will preserve the adequate levels of service[5] at that intersection if the timing and sequence of the light is adjusted for the actual use of the intersection.

Without the Prospect Parkway driveway, the same number of vehicle trips would be predicted to be generated on Prospect Parkway east of the project site (that is, traveling through Appellants' neighborhood). The difference is that, without the Prospect Parkway driveway, the three vehicles seeking to exit the site to travel east on Prospect Parkway would have to exit the Shelburne Street driveway onto Shelburne Street northbound, and

---

[5] Without the Prospect Parkway driveway, left turns out of the project driveway across the two northbound lanes of Shelburne Street to turn south onto Shelburne Street would be at an unacceptable level of service as far as delay is concerned, and would also be a more dangerous maneuver than the left turn from Prospect Parkway at the intersection.

10

then to turn right at the light onto Prospect Parkway. Similarly, without the Prospect Parkway driveway, the two vehicles seeking to enter the site from the westbound lane of Prospect Parkway would have to turn left at the intersection onto Shelburne Street southbound, and then would have to turn left across the two northbound lanes of Shelburne Street into the project's Shelburne Street driveway, which is a less safe turning movement.

Accordingly, with the conditions imposed below, the proposed project meets the requirements for approval under §7.1.6(a) of the Zoning Ordinance as to the adequacy of traffic access, and under §7.1.6(b) of the Zoning Ordinance as to the adequacy of traffic circulation and parking. The proposed project meets the requirements for approval under §6.1.10(d) of the Zoning Ordinance as to efficient and effective circulation. The proposed project meets the requirements for approval under §13.1.6(e) of the Zoning Ordinance in that it will not cause unreasonable congestion or unsafe conditions on highways, streets or other pathways. The proposed project meets the requirements for approval under §§17.1.5(a)(3) and (a)(2) of the Zoning Ordinance in that it will not adversely affect traffic on roads and highways in the vicinity and will not adversely affect the character of the area due to its traffic.

Based on the foregoing, it is hereby ORDERED and ADJUDGED that the proposed project as presented at trial is approved, subject to the standard conditions imposed in the DRB decision and to the further conditions that

1)      Applicants shall schedule the weekly tractor-trailer delivery when the store is closed to customers or during off-peak hours for the use of the drive-through, to avoid conflicts with vehicles exiting the drive-through location, and shall direct that the tractor-trailer delivery vehicle not use Prospect Parkway when arriving at or leaving the site. Applicants shall schedule all other deliveries when the store is closed to

11

customers or during off-peak hours and so that not more than one delivery vehicle is delivering at any one time when the store is open to customers.

2)   Within not more than one calendar year after the project is in use, the City shall determine (and may require Applicants to share in the cost of determining):

(a) whether the timing or sequence of the signals at the intersection should be adjusted, with particular attention to the left turn signal for vehicles southbound on Shelburne Street to turn left onto Prospect Parkway, and with particular attention to the queuing time and length for vehicles westbound on Prospect Parkway waiting to turn onto Shelburne Street; and

(b) whether traffic safety would be enhanced for left turns from southbound Shelburne Street onto Prospect Parkway by the conversion of the traffic lights to overhead lights or by any other technological changes, sufficiently to warrant that conversion.

Any disputes about the cost-sharing for these determinations may be brought to the Court, if necessary, by a motion to amend this order.

3)   As soon as the Prospect Parkway driveway is completed, the City shall arrange for vegetation within the right-of-way for Prospect Parkway, that may be impairing sight distances of or from that driveway, to be cut back on neighboring properties.

Dated at Berlin, Vermont, this 4th day of May, 2007.

_____
Merideth Wright
Environmental Judge

12